IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

_____FILED   _____ENTERED
_____LODGED _____RECEIVED

MAR 1 7 2005

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY                              DEPUTY

JANISE ROSE SWEATMON                    *
                                        *
        Appellant,                      *
                                        *
v.                                      *
                                        *
OCWEN FEDERAL BANK, FSB,                *     Civil No. PJM 05-264
                                        *       [CM-ECF Exempt]
        Appellee.                       *

---

JANISE ROSE SWEATMON                    *
                                        *
        Appellant,                      *
                                        *
v.                                      *
                                        *
WELLS FARGO BANK, N.A.                  *     Civil No. PJM 05-265
                                        *       [CM-ECF Exempt]
        Appellee.                       *

MEMORANDUM OPINION

I.

Janise Rose Sweatmon, a debtor into her fourth Chapter 13 bankruptcy proceeding, appeals two Orders of the Bankruptcy Court, one lifting the automatic stay and permitting Wells Fargo Bank, N.A. to initiate foreclosure proceedings against her residence, the other granting Ocwen Federal Bank FSB's Motion to Dismiss Sweatmon's bankruptcy petition with prejudice. She also appeals a decision of the Bankruptcy Court denying her request to continue her plan confirmation hearing. Having considered the briefs of the parties, the Orders and decision of the Bankruptcy Court will be AFFIRMED.



## II.

Sweatmon is the owner of a residence located at 1204 Clovis Avenue, Capitol Heights, Maryland 20743.[1] When she purchased her home in 1991, First Washington Mortgage Corporation was the named beneficiary of the First Deed of Trust and Note. First Washington's interest was later transferred to G.E. Capital Mortgage, Inc. ("GE"), which in turn transferred it to Wells Fargo.

Sweatmon also placed a second lien on her home, executing a Note and Second Deed of Trust in favor of City Federal Funding & Mortgage Corporation which, after a series of transfers, was succeeded by Chemical Bank.[2] Ocwen is currently the servicing agent on the Note and Second Deed of Trust.

After Sweatmon defaulted on both loans, Wells Fargo and Ocwen sought foreclosure of their respective interests.

### 1. Prior Chapter 13 Filings

To say that Sweatmon's recourse to the bankruptcy process has been excessive is an understatement. A brief summary of her history before the Bankruptcy Court follows:[3]

---

[1]

The property was sold at Wells Fargo's fifth foreclosure sale on February 15, 2005. The sale is currently awaiting ratification by the Circuit Court for Prince George's County.

[2]

City Federal assigned the Note and Deed of Trust to Cityscape Corporation in 1996. Cityscape that same year assigned the Note and Deed of Trust to Harris Trust and Savings Bank. Harris Trust and Savings assigned its interest to Chemical Bank in June 2004.

[3]

Sweatmon has also had an extensive history of litigation with her mortgagees before the District and Circuit Courts for Prince George's County. In August 2000, she filed a suit against Ocwen and GE in District Court, alleging that they manipulated the locks of her home, which the District Court dismissed. In December 2000, she filed a similar suit in the Circuit Court, which was also dismissed. In September 2002, she sued Ocwen in District Court alleging that her loan had been "written off," asserting that Ocwen had no right to collect, which the court dismissed. In January 2003, she filed a similar suit in the District Court, which was dismissed and in which Sweatmon was

In February 1998, faced with foreclosure by GE, Sweatmon filed her first Chapter 13 petition in the U.S. Bankruptcy Court for this District. The court terminated and dismissed the petition with prejudice, leaving Sweatmon ineligible to refile for bankruptcy until September 1999. GE set its first foreclosure sale for April 1999, but that sale was cancelled when Sweatmon applied for a workout plan. When that repayment plan failed, the loan was again placed in foreclosure status.

GE scheduled its second foreclosure sale for August 2000. However, four days prior to that sale, Sweatmon filed her second Chapter 13 petition, which was terminated and dismissed in January 2001.

GE then scheduled a third foreclosure sale for August 2001. Again, just a few days prior to the sale, Sweatmon filed a third petition for relief under Chapter 13. Both Wells Fargo, as successor to GE, and Ocwen moved for relief from the automatic stay. Although the Bankruptcy Court lifted the stay, Sweatmon thereafter moved for a partial hardship discharge, which the court granted.[4]

### 2. Fourth Chapter 13 Filing

Wells Fargo scheduled a fourth foreclosure sale for June 2004. At that point, Sweatmon moved to have the partial hardship discharge modified and have her case "reaffirmed," which the

---

ordered to pay sanctions owing to the frivolousness of the suit. In October 2003, Sweatmon filed suit against Ocwen, its counsel, and City Scape Corporation in the Circuit Court, which the court dismissed—also sanctioning her and barring her from filing any further actions against Ocwen based on any of the grounds alleged or claimed in her prior actions.

[4]

In the third bankruptcy proceeding, Sweatmon admitted that Ocwen was a secured creditor, which she had not done previously. Judge Mannes clearly advised Sweatmon that, despite the fact that Ocwen might have written off her loan for bookkeeping purposes, she was still obligated to repay it.

court declined to do.  Accordingly, on the day prior to the scheduled foreclosure sale, she filed

her fourth Chapter 13 petition.  On October 24, 2004, Wells Fargo moved for relief from the

automatic stay and Ocwen filed an Objection to Confirmation of Sweatmon's Plan.

Wells Fargo's Motion to lift stay was based on the fact that it had received no post-

petition payments from Sweatmon since the inception of her Chapter 13 petition.  When the

Bankruptcy Court scheduled a hearing on this motion for November 22, 2004, Wells Fargo

served all relevant documents pertaining to the motion on Sweatmon at her last known address.

Sweatmon filed no objection to the motion.

On November 18, 2004, after the deadline for filing her Opposition to Wells Fargo's lift

stay motion had passed, Sweatmon filed a "Request for Rescheduling of Hearings" and "Notice

to Creditors filed by Debtor Janies R. Sweatmon re: Request for Rescheduling of Hearings."   In

it she alleged that she and her son had come down with the flu and therefore needed to have the

hearing continued until February 2005.  Sweatmon's request for a continuance was denied.

Occur had a separate bone to pick with Sweatmon.  Apparently because she still harbored

the belief that she owed no debt to Ocwen, Sweatmon failed to list it as a secured creditor in the

schedule accompanying her petition, naming it instead as an unsecured creditor to which she only

owed $1.00.  In consequence, her Chapter 13 Plan provided for no payment of post-petition

arrearages or regular post-petition monthly payments to Ocwen, and in any event Sweatmon

made no such post-petition payments.  Ocwen therefore filed an Objection to Confirmation of her

Plan, accompanied by a timely Proof of Claim for approximately $42,000 (which included the

attorney's fees Ocwen incurred in defending its lien and the many prior cases filed by

Sweatmon).

4

At the hearing on November 19, 2004, Sweatmon's Chapter 13 Plan was denied without leave to amend.  The Bankruptcy Court also ordered that if Sweatmon's case was not converted to a Chapter 7 proceeding or voluntarily dismissed within 14 days of the court's Order, the case would be dismissed by the court, under 11 U.S.C. §109(g), by reason of her failure to prosecute the case properly and in order to avoid abusive multiple or successive filings.  Sweatmon took no action either to convert the case to a Chapter 7 or to voluntarily dismiss her petition.

On December 14, 2004, because Sweatmon failed to make any post-petition payments to Wells Fargo, the Bankruptcy Court lifted the stay as to it ("Order No. 1").  Wells Fargo then scheduled its fifth foreclosure sale for February 15, 2005.

Still Sweatmon took no action to convert or voluntary dismiss her case.  Ocwen then filed a Motion to Dismiss.  On December 16, 2004, after hearing argument by counsel, the Bankruptcy Court entered an Order dismissing Sweatmon's  fourth petition with prejudice, with the provision that she be prevented from filing another bankruptcy petition for 180 days ("Order No. 2").

Approximately two weeks before the fifth foreclosure sale was to take place, Sweatmon filed "Requests for Injunction/Equity Relief" in the Circuit Court for Prince George's County, stating that she had appealed the Order granting relief from the stay. The Circuit Court denied the "Requests."

More or less simultaneously, Sweatmon also appealed Orders No. 1 and 2 of the Bankruptcy Court to this  Court.  In the weeks leading up to the fifth foreclosure sale, she papered the record with multiple motions seeking to stay the sale pending the outcome of this appeal, *viz.*, a "Motion for Relief Stay Pending Appeal," "Request for Extension of Time,"

5

"Emergency Debtor's Additional Defenses to Support Need for Stay Pending Appeal and Law,"
"Emergency Expeditious to Stop Foreclosure Sale," and "Emergency Debtor Request to the Court
to Waive Supersedeas Appeal Bond for Good Cause Shown."

Sweatmon even attempted to stop the fifth foreclosure sale by filing a fifth Chapter 13
petition, although she had been barred from doing so until June 15, 2005 per 11 U.S.C. § 109(g).
The next morning Sweatmon's petition was dismissed summarily.  The foreclosure sale
proceeded to take place as scheduled.

### III.

The district court reviews factual determinations of the bankruptcy court on the basis of
clear error and reviews conclusions of law *de novo*.  Fed. R. Bank. P. 8013; *In re Stanley*, 66
F.3d 664, 667 (4th Cir. 1995); *Deutchman v. Internal Revenue Service (In re: Deutchman)*, 192
F.3d 457, 459 (4th Cir. 1999).

Sweatmon argues that the Bankruptcy Court in this case erred by (1) denying her request
for a continuance of all hearings until February 2005; (2) terminating the automatic stay in favor
of Wells Fargo by Order No. 1 dated December 14, 2004; and, (3) dismissing Debtor's
Bankruptcy case with prejudice by Order No. 2 dated December 16, 2004.

**(1) Whether the Bankruptcy Court Erred in Not Granting Sweatmon's Request for
a Continuance.**

Sweatmon's request to reschedule the hearing on Wells Fargo's motion to lift the stay
while dated two days before the scheduled hearing, was apparently filed on the day of the
hearing, but in any event after the deadline to oppose Wells Fargo's Motion for Relief had
passed.  Her sole ground for requesting a two-and-a-half month continuance was that she and her

son had come down with the flu, leaving her unable to prepare for the hearing or obtain counsel. Other than copies of prescriptions for medications from CVS pharmacy, prescribed for a one week treatment–not two months–she adduced no further evidence in support of her request for a continuance.

Given her long history of dilatory tactics, the Court finds it was not clear error for the Bankruptcy Court to deny the continuance.

**(2) Whether the Bankruptcy Court Erred When it Terminated the Fourth**

**Bankruptcy Stay in Favor of Wells Fargo.**

Sweatmon does not dispute that she made no post-petition payments to Wells Fargo, nor has she offered any evidence that Wells Fargo is adequately protected. 11 U.S.C. § 362(d)(1) provides that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . (1) for cause, including the lack of adequate protection of an interest in property of such party in interest."

Wells Fargo filed its motion to lift stay in compliance with 11 U.S.C. §§ 361 and 362, alleging lack of adequate protection, forwarding all the information required by Local Bankruptcy Rule (L.B.R.) 4001-1.

Its Motion contained:

(1) a detailed statement of the debt owed to it (L.B.R. 4001-1(b)(1));

(2) a description of the amount in arrears (L.B.R. 4001-1(b)(2));

(3) a description of the property encumbered (L.B.R. 4001-1(b)(3));

(4) a description of the security interest involved (L.B.R. 4001-1(b)(4);

(5) a statement of the basis for the relief claimed (L.B.R. 4001-1(b)(5); and

(6) the specific nature of the relief from stay that was requested (L.B.R. 4001-1(b)(7).

Wells Fargo also complied with L.B.R. 4001-1(c) with regard to the hearing date, selecting an available preset hearing date and serving its motion and notice of hearing on Sweatmon and the Chapter 13 Trustee. Although Sweatmon claims she did not receive the notice, the record plainly refutes her claim.

The Court finds the Bankruptcy Court committed no error of fact or law in lifting the automatic stay in favor of Wells Fargo.

**(3) Whether the Bankruptcy Court erred by dismissing the Fourth Bankruptcy case with prejudice.**

Order No. 2 dismissed Sweatmon's Chapter 13 petition pursuant to 11 U.S.C. § 1307(c)(5) on the ground that confirmation of her Chapter 13 Plan had been denied without leave to amend. The Bankruptcy Court also found that she had failed to prosecute her case properly and that cause existed to prevent her from filing another petition for 180 days to avoid abusive multiple or successive filings.

Section 1307 of the Bankruptcy Code governs the dismissal of Chapter 13 cases. Subsection (c) sets out a list of factors that constitute cause for dismissal or to convert a case if the debtor's § 1325 plan has been denied confirmation without leave to amend. It provides:

> [O]n request of a party in interest or the United States trustee and after notice and a hearing, the Court may convert a case under this Chapter to a case under Chapter 7 of this title, or may dismiss a case under this Chapter, whichever is in the best interest of the creditors and the estate, for cause, including__
> * * *
> (5) denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for filing another plan or a modification of a plan[.]
> 11 U.S.C. § 1307(c).

11 U.S.C. § 105(a) gives the Bankruptcy Court the power necessary to prevent a debtor from abusing the bankruptcy process with multiple or successive filings by preventing a debtor from re-filing for 180 days.

Section 1325 of the Bankruptcy Code governs the confirmation of a Chapter 13 Plan. § 1325(a)(5) provides that the Court shall confirm a Chapter 13 Plan only if, as to each allowed secured claim, "the value, as of the effective date of the plan, or property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim." This provision required Sweatmon to provide Wells Fargo and Ocwen with payments over the life of the Plan that would total the present value of the allowed secured claim. *See United Carolina Bank v. Hall*, 993 F.2d 1126 (4th Cir. 1993). Section 1325(a)(6) further requires that Sweatmon's Plan be feasible. According to her Schedule I (Current Income of Individual Debtor), Sweatmon was receiving no income, which was necessary if she was to fund her Plan.

In her fourth Chapter 13 petition and Plan, although she listed Ocwen as a secured creditor, Sweatmon alleged that she only owed it $1. Further, her Plan failed to provide for the payment of post-petition arrearages and regular post-petition monthly payments to her secured creditors. Sweatmon does not dispute that she has made no post-petition payments or that her Plan failed to provide for such payments. Accordingly, her Plan plainly failed to comport with the requirements of 11 U.S.C. § 1325(a)(5) and 1325(a)(6), which means that the Bankruptcy Court acted appropriately in denying the Plan.

As to Order No. 2, which denied confirmation of Sweatmon's Chapter 13 Plan without leave to amend, the Bankruptcy Court ordered that in the event the case were not converted or voluntarily dismissed within fourteen (14) days of the Order, the case would be dismissed subject

9

to 11 U.S.C. § 109(g). Sweatmon never moved to voluntarily dismiss the case or convert the case to a Chapter 7 proceeding. Apart from that, the Bankruptcy Court could fairly find that dismissal was in the best interest of Sweatmon's creditors because it would enable them to pursue remedies under state law, including allowing Wells Fargo to proceed with its fifth foreclosure sale.

The Bankruptcy Court did not err in dismissing Sweatmon's fourth bankruptcy petition.

## IV.

For these reasons, the Court will AFFIRM the Bankruptcy Court's Order dated December 14, 2004 granting Wells Fargo Bank's Motion for Relief from the Automatic Stay; its Order dated December 16, 2004 granting Ocwen Federal Bank's Motion to Dismiss the Case with Prejudice, and its decision not to grant Sweatmon's request for a continuance of all hearings until February 2005. All of Sweatmon's motions, including those to stay the foreclosure sale pending this decision, are deemed MOOT.

A Separate Order will issue.


March 17, 2005

_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE


I hereby attest and certify on April 1, 2005
that the foregoing document is a full, true and correct
copy of the original on file in my office and in my
legal custody.
FELICIA C. CANNON
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND

_____ Deputy